IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| QBE INSURANCECORPORATION, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CASE NO.: 12-cv-00054-KD-C |
| ) | |
| WHISPERING PINES CEMETERY, ) | |
| LLC;   et al. ) | |
| ) | |
| Respondent. ) | |

### QBE INSURANCE CORPORATION'S RESPONSE TO DEFENDANTS MARTIN AND WILLIAMS' MOTION FOR SUMMARY JUDGMENT

COMES NOW QBE Insurance Corporation (hereinafter referred to as "QBE"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.1 and 7.2 of the United States District Court for  the Southern District of Alabama, and files this its response to the motion for summary judgment filed by Defendants Martin and Williams herein.

QBE has filed its separate motion for summary judgment addressing most, if not all, of the arguments that are the subject of Martin and Williams' motion for summary judgment.  They argue, in essence, that the language found in the "funeral services exclusion" contained in the QBE Policy issued to Whispering Pines Cemetery (Whispering Pines) is either (1) ambiguous (2) not ambiguous and Whispering Pines simply does not perform any of the excluded conduct; or finally (3) the language is not ambiguous and Martin and Williams claims are wholly unrelated to the excluded acts of "burial", "disposal" or "handling" of dead bodies.  Martin and Williams' position would require the Court to put aside the generally accepted definitions of "burial", "disposal" and "handling" with respect to cemeteries and adopt strained definitions of the terms in order to find an ambiguity where none exists.

**A.    Interpretation of Insurance Policy is a Question of Law and Ambiguity Cannot be Created by Strained or Twisted Reasoning in Interpreting the Language**

Martin and Williams are generally correct in their statement of the Court's role in reviewing an exclusion contained in an insurance policy. However, "it is equally settled in Alabama . . . that unambiguous policies are to be enforced as written." Brown Mach. Works, 659 So.2d at 59 (quoting Amerisure Ins. Co. v. Allstate Ins. Co., 582 so.2d 1100, 1102 (Ala. 1991). "If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court." McDonald v. U.S. Die Casting & Dev. Co., 585 So.2d 853, 855 (Ala. 1991). The test to be applied by a court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean." Miller v. Allstate Ins. Cos., 896 So.2d 499, 503 (Ala. Civ. App. 2004). In determining whether an ambiguity exists, a court should apply the common interpretation of the language alleged to be ambiguous. . . [T]he terms of an insurance policy should be given a rational and practical construction." Id. "Ambiguities cannot be constructed from thin air by strained or twisted reasoning in interpreting the language." Caribbean I Owners' Ass'n, Inc. V. Great Am. Ins. Co. Of N.Y., 600 F. Supp.2d 1228, 1245 (S.D. Ala. 2009). "Furthermore, the mere fact that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous." Id. The fact that the parties disagree on the interpretation does not make the policy ambiguous. See 2 Lee R. Russ & Thomas F. Segalla, Couch on Insurance §21:14 (3d ed. 2010).

2

    **1.**    **A Plain Reading of the Funeral Services Exclusion Shows that the language is clear and unambiguous in spite of the testimony of Whispering Pines strained definition of burial**

Martin and Williams attempt to argue that the "funeral services exclusion" does not apply by alleging that Whispering Pines "merely provides a small plot of earth, and "opens" the grave into which the funeral home inters the remains. Then the cemetery "closes" the grave." (Martin and Williams Brief, pg. 4) As evidence of this fact, they cite the testimony of Sharon Sanders who was the corporate representative for Whispering Pines Cemetery. Mrs. Sanders did indeed testify that Whispering Pines does not "bury" people. Mrs. Sanders was extremely careful not to say that Whispering Pines participated in the burial or disposition of dead bodies, but her testimony clearly shows that they were and that her "interpretation" of the word burial was made in an effort to get out of the clear exclusion of the policy. Mrs. Sanders' testimony clearly shows that Whispering Pines actions and the claims of the defendants are excluded by the plain language of the funeral services exclusion:

```
1     Q   Okay.  Now, your understanding of the word
2    burial, would you agree that the word burial, with
3    regard to what happens to a body in a cemetery,
4    would include that that body is placed into the
5    ground?  Would you agree to that?
6     A   Yes.
7     Q   Would you agree that it's part of the
8    burial that after the casket is placed into the
9    vault and the vault is sealed that that vault and
10   that body and casket are then covered up with
11   dirt?
12    A   Yes.
13    Q   Would you agree that part of the covering
14   up of the body and the casket and the vault is
15   part of the responsibility of the cemetery?
16    A   Would I agree that the covering up is?
17    Q   That's right, putting the dirt on top.
18    A   Yes.  The dirt on top, yes.
```

19   Q   Would you agree that the responsibility
20   for digging the grave in the cemetery where the
21   vault can be placed, and the casket with the dead
22   body inside it can be placed inside the vault,
23   that the digging of the grave is the

56

1    responsibility of the cemetery?
2    A   Yes.
3    Q   In the Abrams case and the other cases
4    involved in these lawsuits, that was a
5    responsibility of Whispering Pines Cemetery?
6    A   I can't say that for all the other cases
7    because I don't remember anything about them.
8    Q   Okay.  In the Abrams case, how about that
9    one?
10   A   Yes.
11   Q   You would agree that Whispering Pines
12   Cemetery had the responsibility for digging that
13   grave?
14   A   That's correct.
15   Q   And you would agree that Whispering Pines
16   had the responsibility of covering up the vault,
17   the casket, the remains, that were buried there;
18   is that correct?
19   A   That is correct.
20   Q   And once they got the dirt on top of it,
21   Whispering Pines did something, either replaced
22   sod or planted something on top; is that correct?
23   A   Yes.

57

1    Q   And Whispering Pines, part of their
2    responsibility with regard to where Mr. Abrams
3    was buried, was to keep track of that location
4    where he was buried; would you agree with that?
5    A   I would agree.
6    Q   Would you agree that part of that
7    responsibility of keeping those records of where
8    people are buried relates -- at least relates --
9    to the fact that they're buried at Whispering
10   Pines?

11     MR. BRISKMAN: Object to the form. I
12  think it mischaracterizes her earlier
13  testimony.
14 BY MR. FRANKLIN:
15   Q  Would you agree that the --
16   A  Start over again.
17   Q  Would you agree that the keeping of the
18 records relates to the fact that the person is
19 buried there at Whispering Pines?
20   A  Yes.
21   Q  Would you agree that Whispering Pines
22 participates in the disposition of the bodies that
23 are brought in to be buried at Whispering Pines?

58

1   A  No, I don't agree with that.
2   Q  Okay. Do you understand what a
3 disposition as it relates to a body is?
4   A  Yes.
5   Q  Can you tell me what your understanding of
6 what the word disposition means as it relates to a
7 dead body?
8   A  The body is brought in by a funeral home.
9 The funeral director then goes to the place of
10 burial, which the vault people have already placed
11 the bottom part, you know, in the hole. And then
12 the funeral director -- what's the word I'm trying
13 to say -- lets the body down. After all of this
14 is over, then we cover with dirt.
15   Q  My question to you was, what is the
16 **definition of disposition as it relates to the**
17 **body?**
18   **A  Disposition?**
19   **Q  Yes, ma'am. How is a body disposed of in**
20 **a cemetery?**
21   **A  The body is buried and covered.**
22   **Q  So would you agree that the disposition as**
23 **it relates to a body in a cemetery is that it's**

59

1 **buried and covered?**
2   **A  Uh-huh (positive response).**
3   **Q  Is that yes?**

5

    4    **A  Yes, sir.**

Exhibit A, Sanders depo, pgs. 55-58(emphasis added)

Mrs. Sanders further testimony exemplifies her strained interpretation of the word "burial" and "disposition" contained in the "funeral services exclusion" of the policy:

```
 6     Q   There we go.  In big bold letters up at
 7    the top, the bigger print than anything there,
 8    what does it says?
 9     A   Exclusion.
10     Q   And then it says what?
11     A   Funeral services.
12     Q   Then underneath it, it's got wording that
13    says, "This endorsement modifies insurance
14    provided under the following."  Do you see that?
15     A   Yes, I do.
16     Q   It says, "The following exclusion is added
17    to Paragraph 2, Exclusions of Section 1 -
18    Coverage A - Bodily Injury and Property Damage
19    Liability."
20     A   Uh-huh (positive response).
21     Q   And Paragraph 2, Exclusions of Section 1 -
22    Coverage B - Personal and Advertising Injury
23    Liability," do you see that?

                         85
 1     A   Yes, I do.
 2     Q   Did you read that exclusion when you
 3    received the policy back in 2007?
 4     A   Yes.
 5     Q   And it says, "This insurance does not
 6    apply to bodily injury, property damage or
 7    personal and advertising injury arising out of
 8    errors or omissions in the handling, embalming,
 9    disposal, burial, cremation, or disinterment of
10    dead bodies."  Did you see that?
11     A   Yes.
12     Q   And the subsequent years' renewals with
13    QBE Insurance for the same policy had that same
```

14  exclusion contained in it for 2008 and then again
15  in 2009, didn't it?
16     A   I'll have to look and see.
17     Q   All right.  And we'll do it.  Do you
18  remember that those policies contained the same
19  exclusions?
20     A   No, I don't remember, but I'm pretty sure
21  they did.[1]
22     Q   So there's no question that back in 2007
23  when you first obtained the insurance from QBE,

86

1   you read that exclusion that we just went over; is
2   that correct?
3      A   That's correct.[2]
4      Q   Okay.  And at that time you knew that
5   Whispering Pines did not do embalming and we
6   talked about that?
7      A   Uh-huh (positive response).
8      Q   It didn't do cremation; correct?
9      A   Correct.
10     **Q   But you knew that as a cemetery it was**
11  **involved with a burial; correct?**
12     **A   Yes.**
13     Q   And to the extent that you and I talked
14  about what the disposition of a body was and you
15  said that was the burial, you knew that Whispering
16  Pines --
17     A   No, I didn't.
18     Q   I haven't finished my question yet, Mrs.
19  Sander.
20     A   Oh, I'm sorry.  I'm sorry.  I don't do
21  this often.
22     Q   I understand.  You've got to let me
23  finish my question so we get it all on the record

---

[1]Mrs. Sanders later testified that she indeed had received a letter from Burkholder Insurance enclosing a copy of the 2009-2010 policy at issue, and that it contained the same funeral services exclusion discussed with regard to the 2007 policy issued by QBE.  Exhibit A, Sanders depo, pgs. 101-102.

[2]In later testimony, Mrs. Sanders testified "Well, to tell you the truth, I didn't notice that until later,"and that she couldn't remember when she read the policy.  Sanders depo, pg 98-99.

87

1   before you give an answer; okay?
2     A   Okay.
3     Q   We talked earlier and you testified that
4   with regard to the word disposition of a dead body
5   at a cemetery, that means that it's buried;
6   correct?
7     A   I said that all we do is -- we don't bury.
8   **We open the grave. The funeral home -- there's a**
9   **what they call -- well, it's a roller that the**
10  **casket sits on. And the funeral home director**
11  **puts his foot down on the pedal and lets the body**
12  **down. That's the burial. (Indicating).**
13    Q   I understand what you're saying, Mrs.
14  Sanders.
15    A   Do you? Okay. I know you do. You're
16  smart.
17    Q   Yeah. But you and I talked earlier and
18  you testified when I asked you specifically about
19  what the word disposition means with regard to
20  bodies and cemeteries and you said burial;
21  correct?
22        MR. DUNCAN: Object to the form.
23        MR. BRISKMAN: The testimony speaks for

88

1   itself.
2   BY MR. FRANKLIN:
3     Q   Am I correct? Wouldn't you agree with
4   that?
5     A   Say it again.
6     **Q   That the word disposition, when it's used**
7   **with regard to bodies at a cemetery, means burial?**
8     **A   That's what disposition means.**
9     **Q   And a minute ago you said that at least**
10  **with regard to the burial of a dead body that**
11  **Whispering Pines was involved in that; correct?**
12    **A   No.**
13    Q   That's what you said.
14        MR. DUNCAN: No, it's not.
15    A   I said that Whispering Pines was not
16  involved in the actual burial of a body. We open
17  the grave. We have no contact --

18  BY MR. FRANKLIN:
19     Q   That's the digging; right?
20        MR. BRISKMAN:  Please, Keith, you've got
21   to let her finish her answer.
22     A   That's the digging of the grave, yes, sir.
23   And we don't touch it anymore after that.

89

1  BY MR. FRANKLIN:
2     Q   Well, I thought you testified earlier that
3   y'all put the dirt on top of the casket --
4     A   But we don't touch it.
5     Q   -- and the vault?
6     A   We put the dirt on top of the vault.
7     Q   Okay.
8     A   See, burial would mean that we would have
9   contact with the body itself, but we don't.  We
10  open the grave.  We open the grave.  The vault man
11  puts the vault in.  Then we step aside so the
12  funeral home person comes and lets the body down
13  into the vault.
14        We don't actually have any contact with
15  the body itself.  Then we come and put the dirt on
16  top of the vault after the undertaker puts it in,
17  and the vault people put the top on it and seal
18  it.  And then we put the dirt on.
19     Q   Right.  You want to split hairs in this
20  case, don't you?
21     A   No, sir, I want to tell the truth.
22        MR. DUNCAN:  That's the pot calling the
23   kettle black.

90

1  BY MR. FRANKLIN:
2     Q   What your --
3     A   I'm not arguing with you.  I can't afford
4   to.
5     Q   Okay.
6     A   I'm just trying to be sure that, you know,
7   it's kosher.
8     Q   Right.  And what your testimony is under
9   oath here today and the truth is you're telling us
10  that cemeteries don't bury people.  Is that what

9

11  you're saying?
12      MR. DUNCAN:  I object to the form.
13   A   I didn't say that either.
14  BY MR. FRANKLIN:
15   Q   Well, is that what you would say?
16   A   That cemeteries don't bury people?
17   **Q   You're telling us that Whispering Pines**
18  **Cemetery doesn't bury people in the cemetery?**
19      **MR. DUNCAN:  Object to the form.**
20   **A   No, I'm not telling you that.  I know that**
21  **we bury people, but we have no contact with the**
22  **body except for covering it.  When you say people,**
23  **in my mind's eye that means the human cadaver of**

91

1  **the body.**
2    Q   Well, that's the only thing that's buried
3  in a cemetery grave is the human cadaver, the dead
4  body; correct?
5    A   The human cadaver, the body, and the
6  casket.
7    Q   Right.  But you don't bury caskets that
8  are empty; correct?
9    A   Well, I would not have any way of knowing
10  what's in that casket because the casket is
11  casketed by the funeral home from whence it came.
12      We don't even pallbearer, we don't touch
13  the pall.  Do you know what I'm saying?
14    Q   I understand what you're saying, Mrs.
15  Sanders.
16    A   I know you do.  I know you do.  What I'm
17  saying is that the cemetery doesn't bury bodies.
18  It's a simple fact that the body is lowered --
19  lowering device is what I was trying to think
20  of -- by a lowering device, which the funeral
21  director inters the body.
22      The vault man has a wrench and he comes
23  and puts the top on the vault.  And we cover the

92

1  grave, and that's all we do.
2    **Q   So as we're sitting here today it's your**

```
 3   testimony that Whispering Pines Cemetery doesn't
 4   bury anyone at Whispering Pines Cemetery?
 5     A   No, I'm not saying that.
 6        MR. DUNCAN:  Object to the form, asked
 7     and answered.
 8  BY MR. FRANKLIN:
 9     Q   All right.  Would you agree then that
10   Whispering Pines Cemetery buries people at
11   Whispering Pines Cemetery?
12     A   No, I don't agree to that.
13     Q   Well, which one is it?  Are you claiming
14   that --
15     A   Which one is it?
16     Q   Yes.
17        MR. BRISKMAN:  Object to the form.  It's
18     argumentative.  The testimony speaks for
19     itself.  She's answered this inquiry.
20  BY MR. FRANKLIN:
21     Q   Are you saying that Whispering Pines
22   Cemetery buries bodies at the cemetery?
23     A   We don't bury the body.  The undertaker --

                           93
 1   we open the grave and the undertaker inters the
 2   body.  Okay.  Then the vault people cover, but we
 3   do not have hands or anything on the body or the
 4   casket or anything.
 5     Q   I understand.
 6     A   So I don't know when you say we bury the
 7   body, we bury what the undertaker brought to us.
 8   We don't know what's in that casket.  We don't
 9   know if it's a person or what, you know.  So
10   that's the limit of what we do.
11     Q   Okay. You would not dispute that normally
12   what you would expect is that there is a body, a
13   dead body, in the casket that is brought to
14   Whispering Pines at funerals; correct?
15     A   Normally, yes.
16     Q   You're not aware of any occasion when the
17   funeral director or the funeral home, or anyone
18   else, would bring an empty casket to be buried at
19   Whispering Pines Cemetery, are you?
20     A   I have no knowledge of what he's bringing.
```

21   That would be an assumption on my part, that it's
22   empty or filled.
23       Q   But it would be a safe assumption that

94

1    it's got a dead body in it, wouldn't it?
2        A   It would be a safe assumption, a safe
3    assumption.
4        Q   Would you agree that it's not the normal
5    course of business to bury empty caskets?
6        A   I agree to that.
7        Q   And it would be the normal course of
8    business that dead bodies are buried in
9    cemeteries.  Would you agree with that?
10       A   Dead bodies are buried in the cemeteries,
11   yes.
12       Q   And would you agree that in the case of
13   Mr. Bud Abrams that his dead body was buried at
14   Whispering Pines Cemetery?
15       A   Yes.
16       Q   Would you agree with regard to Mr. Abrams
17   that it was Whispering Pines Cemetery that dug his
18   grave?
19       A   Yes.
20       Q   That it was Whispering Pines Cemetery that
21   marked where to dig his grave?
22       A   Yes.
23       Q   That it was Whispering Pines Cemetery that

95

1    was responsible, and did in fact cover the dirt
2    back on top of his grave?
3        A   Yes.
4        Q   That it was Whispering Pines Cemetery that
5    placed the headstone over the place where it
6    believed his grave was located?
7        A   Yes.
8        Q   Okay.  So we can agree on all of those
9    things; correct?
10       A   Uh-huh (positive response).
11       Q   And would you agree that Whispering Pines
12   Cemetery, to the extent that it dug Mr. Abrams'
13   grave, covered his grave up where his dead body

```
14   was buried and then later kept records of where
15   that burial took place --
16   A   Uh-huh (positive response).
17   Q   -- was all done by Whispering Pines
18   Cemetery?
19   A   Yes.
```
Exhibit A, Sanders depo, pgs.84-95 (emphasis added)

Mrs. Sanders admits that Whispering Pines buries people in the cemetery. She admits that Whispering Pines is responsible for marking the location of the graves for burial, that Whispering Pines digs the graves for the burial, and that Whispering Pines covers the vault with the casket in it (presumably with a dead body contained in the casket) with dirt. By any prudent person's standard, Whispering Pines buries people in their cemetery. It strains credibility for Mrs. Sanders to say, and the defendant's to hold, that because Whispering Pines' employees do not physically touch the dead body, that they therefore do not bury them. No one refers to a person's casket or vault having been buried in a cemetery, and the days of simply burying a dead body without a casket or a vault have long since passed.

What she testified to was that Whispering Pines selects and marks the site of the grave, they dig the grave, then the funeral home (or some other entity) places the casket containing the deceased dead body into the vault that had been placed in the hole dug by Whispering Pines, the vault is closed, and Whispering Pines "covers with dirt." Parsing words, Martin and Williams and Mrs. Sanders allege that Whispering Pines "merely" "opens" and "closes" the grave. The inescapable conclusion is that the common interpretation of the words burial and diposal clearly show that the "funeral services exclusion" is plain and unambiguous and that the exclusion bars coverage for any claims arising out of the burial or disposal of dead bodies.

For Martin and Williams and the other defendants to attempt to recast, rephrase or redefine their claims to allege that they have no problem with the burial does not cure their problems with application of the exclusion. No matter how the claim is phrased or couched, the claims all arise out of the burial, disposal or handling[3] of the deceased family member's body. This is true whether they say that the claim is for poor record keeping, fraud, suppression or outrage or any other claim that is made. Each of the claims arises out of the burial, disposal or handling of a dead body.[4]

Martin and Williams next argue that their claims relate not to the burial, disposal or handling as referenced in the exclusion, but are for events that occurred "long after the 'handling' of the body by anyone was concluded, or that the "inadequate records keeping may have and probably did occur years after the burials actually took place." Without dispute, the time for creating a record of the location of a grave occurred at the time the grave site was selected, marked, and dug by Whispering Pines. All of these events were a part of the process of burial. Records are not created years after the fact.

Although not dispositive of the issue, Alabama Statutes Do Not Authorize Funeral Homes or Funeral Directors to Bury or Dispose of Dead Bodies–Only Cemeteries

The argument regarding the Alabama Statutes that govern funeral directors, embalmers, or funeral homes is at most a red herring. The language of the exclusion itself is what controls. Martin and Williams want to argue that because the title of the exclusion is labeled "Funeral Services

---

[3]Interestingly, Martin and Williams' complaint alleges that Whispering Pines "negligently placed or *mishandled* and/or negligently or wantonly recorded the location of the Deceased's grave sites." Martin Motion, pg. 12. Their complaint uses the root word "handle" in a way inconsistent with their position of the definition in their brief.

[4]Each of these issues is more fully addressed in QBE's Motion for Summary Judgment previously filed, which is incorporated herein by reference.

14

Exclusion" and because Alabama Code § 34-13-1 is entitled "Funeral Services" and because there is a clear delineation of between "Funeral Services" and "Cemetery Functions" in the statute, that there must be some ambiguity in the exclusion.

First, it should be noted that the title to Alabama Code Section 34-13-1 is "Definitions – Chapels – Cemetery authorities." Under the definitions contained in this section, the definition of "cemetery authority" includes: "any individual, person, firm, . . . corporation , , , insofar as they own, operate . . . or manage . . . one or more cemeteries . . . or hold grounds for . . . burial purposes in this state and engage in the operation of a cemetery, including any one of the following: . . . the interment, entombment, and memorialization of the human dead in a cemetery." Also included in this definition of what a cemetery authority does is "the supervision and conduct of funeral and burial services with the bounds of the cemetery." Alabama Code § 34-13-1(8).

Noteworthy, is what is not found in the definition of a "funeral director" or "funeral establishment" or "funeral directing". None of the definitions permit the funeral director or funeral establishment to actually bury a dead body. It simply allows them to "prepare" a dead human body for burial or disposition. It is the owner or operator of the cemetery-- the "cemetery authority"--that buries a dead body in a cemetery or otherwise disposes of the body in a columbarium or mausoleum.

The statute simply makes the point that cemeteries bury people or otherwise dispose of the human dead. The statute itself does not define "funeral services", but rather implies that funeral services include anything from embalming to burying, which is precisely what is stated in the exclusion.

Lastly, Martin and Williams submit that "reasonable record keeping of a grave site location is simply not part of the burial or funeral itself. Instead, it relates to the "care and maintenance" of

a cemetery." Martin brief, pg. 23. This statement simply ignores the broad language used in the "funeral services exclusion" of the policy. The exclusion states that: "This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of errors or omissions in the handling, embalming, disposal, burial, cremation, or disinterment of dead bodies." Martin and Williams ignore the fact that the exclusion uses the term "arises out of" which has "generally been held to be a broad, comprehensive term meaning 'origination from,' 'having its origin in,' 'growing out,' or 'flowing from.'" Taliaferro v. Progressive Specialty Ins. Co., 821 So. 2d 976, 981 (Ala. 2001) (quoting Travelers Ins. Co. v. Aetna Cas. & Sur. Co., 491 S.W.2d 363, 365 (Tenn. 1973)). Without question, the failure to keep records of the burial location of persons buried in the cemetery "arises out of", "originates from", "grows out of", or "flows from" the burial of that person. Each of the claims made by Martin and Williams, likewise "arise out of" the burial of their deceased family members burial at Whispering Pines.

## CONCLUSION

The funeral services exclusion is clear and unambiguous and should be applied as written. The claims of Martin and Williams "arise out of" the burial, handling, or disposition of their deceased family members who were buried in Whispering Pines Cemetery. Because the claims, no matter how they are framed fall within the application of the exclusion, QBE owes no duty to defend Whispering Pines for the claims of Martin and Williams in the underlying action. Because the exclusion applies to all claims of Martin and Williams and there is no duty to defend, there is likewise no duty to indemnify. See Essex Ins. Co. V. Foley, 827 F. Supp.2d 1326, 1331 (Ala. 2011). Martin and Williams' Motion for Summary Judgment is due to be denied.

                Respectfully Submitted,


                */s/ Keith B. Franklin*
                STEWART L. HOWARD (HOWAS7912)
                KEITH B. FRANKLIN (FRANK8196)
                Attorneys for QBE INSURANCE CORPORATION

OF COUNSEL:
Stewart Howard, P.C.
Post Office Box 1903
Mobile, Alabama 36633
P: (251) 431-9364
F: (251) 431-9368
stewart@slhpc.com
keith@slhpc.com


### CERTIFICATE OF SERVICE

      I hereby certify that on the 26th of November, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filling to the following:

| | |
|---|---|
| J. Brian Duncan, Jr. | Samuel Joshua Briskman |
| David G, Wirtes, Jr. | Briskman & Binion PC |
| Cunningham Bounds, LLC | 205 Church Street |
| Post Office Box 66705 | Mobile, AL 36602 |
| Mobile, Alabama 36660 | |

      And I hereby certify that I served by U.S. Mail, properly addressed and first class postage, prepaid, the foregoing to the following:

| | |
|---|---|
| WHISPERING PINES CEMETERY, LLC | Michael B. Smith |
| 305 North Dearborn | Post Office Box 40127 |
| Mobile, Alabama 36603 | Mobile, Alabama 36640 |
| (Notice Purposes Only) | (Notice Purposes Only) |

           Travis M.  Bedsole, Jr.
           U.S.B.A.
           Post Office Box 36652-3083
           Mobile, Alabama 36652
           (Notice Purposes Only)


           */s/ Keith B. Franklin*
           OF COUNSEL