IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| QBE INSURANCE CORPORATION, ) | |
| ) | |
|     Plaintiff/Counterdefendant, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 12-0054-KD-C |
| ) | |
| WHISPERING PINES CEMETERY, LLC, ) | |
| QUEEN PETTWAY, CARLIS EATON, ) | |
| ROSIE MAY ABRAMS, COURTNEY ) | |
| VASHAY ABRAMS, JERMAINE ABRAMS, ) | |
| TAMARA MARTIN, and LESESTER ) | |
| WILLIAMS, ) | |
| ) | |
|     Defendants/counterclaimants. ) | |

**ORDER**

This declaratory judgment action based on diversity of citizenship is before the Court on the motion for summary judgment and supporting documents filed by defendants Tamara Martin and Lesester Williams (docs. 64-67), the response filed by plaintiff QBE Insurance Corporation (doc. 76) and Martin and Williams reply (doc. 77). Upon consideration and for the reasons set forth herein, the motion filed by Martin and Williams is GRANTED, in part.

I. Factual background

QBE issued a Commercial General Liability policy to Whispering Pines Cemetery, LLC. Defendants Queen Pettway and Carlis Eaton; Rosie May Abrams, Courtney Vashay Abrams, and Jermaine Abrams; and Tamara Martin and Lesester Williams filed three separate lawsuits in the Circuit Court of Mobile County, Alabama, against the funeral homes involved with the respective funerals and Whispering Pines. As to Whispering Pines, defendants brought claims of negligence, wantonness, outrage, and breach of contract based upon Whispering Pines' failure to keep and maintain adequate records of the locations where their respective family members are buried. Defendants seek compensatory and punitive damages for mental anguish and emotional distress.

Defendants Williams and Martin are the family members of Steven Prince, Sr., Emma Lee Prince, Steven Prince, Jr., and William Mae Mobley who were buried at Whispering Pines in 1996, 1990, 2000, and 2004, respectively. Approximately two weeks before Mother's Day in 2009, Martin contacted Whispering Pines to locate her mother Emma Lee Prince's grave to place a monument. She also asked for the section and lot number of the graves of her father and siblings. Whispering Pines was unable to tell her where her mother was buried but did provide the information as to her father and siblings. (Doc. 63-1, second amended complaint in the state court action)

In addition to negligence, wantonness, outrage and breach of contract, defendants Williams and Martin also claim fraudulent suppression and misrepresentation. *Id*. Williams and Martin base this claim on Whispering Pines' representation that it knew where Emma Lee Prince's grave was located, when it did not have any records of the location, and on Whispering Pines' duty to inform Williams and Martin that the location could not be identified because of its failure to keep and maintain accurate records of the gravesites. *Id*. Martin and Williams also allege that they are not bringing any claims related to the actual burial of their family members but raise their claims only as to Whispering Pines' failure to keep and maintain accurate records as to where their family member were buried. *Id.*

QBE seeks a declaratory judgment that it does not owe any coverage or defense to Whispering Pines. In its complaint, QBE asserts four theories as to why coverage or a defense is not owed: 1) The Funeral Services Exclusion applies to claims arising out of the burial, handling or disposal of a body; 2) some of the claims did not occur during the policy period;[1] 3) the claims

---

[1] The policy had a stated term of March 26, 2009 to March 26, 2010. (Doc. 1-10, p. 1) Whispering Pines cancelled the policy on November 25, 2009. (Doc. 1-11, Cancellation Request) On motion for summary judgment, Martin and Williams argue that their injury occurred and their claims arose during the policy period (near Mother's Day 2009). (Doc. 65) QBE did not respond to their argument. (Doc. 76) Also, on motion for summary judgment, QBE did not argue that any of the underlying plaintiffs' claims occurred outside of the policy period. (Doc. 68, 69) In their response, Martin and Williams point out that QBE included a proposed finding of fact that they
(Continued)

2

arise from intentional conduct and thus are not an "occurrence" as defined in the policy; and 4) as to the claims for breach of contract, the policy contains a contractual liability exclusion which excludes claims based on liability assumed in a contract. [2]  (Doc. 1)  Martin and Williams answered QBE's complaint and counterclaimed for declaratory relief. (Doc. 15)

Section 1 of the policy addresses coverage. In paragraph 1, captioned "Insuring Agreement", the policy states in relevant part, as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory[.]"

(Doc. 1-10, p. 14)

---

"did not know that their family members' grave locations were unknown until June 2010, after the Policy had terminated" but otherwise did not address the issue. (Doc. 73, p. 2, n.1; Doc. 70)

Because QBE did not raise this theory in its motion for summary judgment or in its response to Martin and Williams' motion for summary judgment, the Court finds that QBE has abandoned this theory. *See Brasseler, USA I, LP v. Stryker Sales Corp*, 182 F. 3d 888, 892 (Fed. Cir. 1999) (discussing *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F. 3d 1563 (11th Cir. 1994), and explaining that where plaintiff failed to address a claim in its opposition to defendant's motion for summary judgment and "did not raise the theory in its own motion for summary judgment", the Eleventh Circuit properly treated the claim as abandoned); *see Floyd v. Home Depot USA*, 274 Fed. Appx. 763 (11th Cir. 2008) (finding that district court properly determined that Floyd had abandoned his ADA retaliation termination claim because he did not respond to Home Depot's argument on that claim) (*citing Resolution Trust Corp. v. Dunmar Corp.*, 43 F. 3d 587, 599 (11th Cir. 1995)).

[2]  Martin and Williams argue that this policy exclusion does not apply. (Doc. 65) QBE did not respond to their argument. (Doc. 76)  Also, on motion for summary judgment, QBE did not argue that this exclusion precluded coverage or a defense. (Doc. 68, 69)  In their response, Martin and Williams point out that QBE "relies almost exclusively on the Funeral Services exclusion" (doc. 73, p. 3).  Accordingly, the Court finds that QBE has abandoned this theory. *See* footnote 1.

3

In paragraph 2, captioned "Exclusions", the policy states as follows:

> This insurance does not apply to (a) Expected or Intended Injury. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

(Doc. 1-10, p. 15)

Section V, contains the definitions applicable to the policy. "'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. 1-10, p. 25)   "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1-10, p. 27)

The policy issued to Whispering Pines contains a Funeral Services Exclusion endorsement that provides as follows:

> The following exclusion is added to Paragraph 2., Exclusions of Section 1 - - Coverage A - - Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section 1 - - Coverage B - - Personal And Advertising Injury Liability:
>
> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of errors or omissions in the handling, embalming, disposal, burial, cremation, or disinterment of dead bodies.

(Doc. 1-10, p. 33).

II. <u>Conclusions of law</u>

A. <u>Jurisdiction and venue</u>

This Court has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Venue is proper because the events giving rise to this action occurred in the Southern District of Alabama. 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in – a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated[.]")

B.  <u>Choice of law</u>

The substantive law of the State of Alabama applies to this diversity action. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) ("[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits.") (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). In that regard, the substantive law of Alabama follows the traditional conflict-of-law principles of *lex loci contractus* and *lex loci delicti*. *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009). The parties do not dispute that the insurance contract was made in Alabama or that Alabama was the site of the conduct giving rise to the torts alleged. *See Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004)("The doctrine [of *lex loci contractus*] states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction.") (citing *Cherry, Bekaert& Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991)) (internal quotations omitted); *Cincinnati Ins. Co. v. Girod*, 570 So. 2d 595, 597 (Ala. 1990) ("Because this dispute involves an interpretation of an insurance policy issued in the State of Alabama, under Alabama's conflicts of law rule the trial court would be obligated to apply the substantive law of Alabama . . .")

Additionally, "[i]It is well settled that federal courts are bound by the interpretation of a state statute by state courts." *Insurance Co. of North America v. Lexow*, 937 F.2d 569, 571 (11th Cir.1991). Also, "[i]n applying state law, a federal court must 'adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Id*. (citations omitted).

C. Summary judgment standard

Summary judgment should be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If a party asserts "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)&(B).

The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clarkv. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)).

Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of materialfact. *Id*.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v.Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S.Ct. 1598, 1608-1609 (1970).  However, "[a] moving party is entitled to summary judgment

if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'"*In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552).Overall, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)).

D.  Statement of the law

In Alabama, "[g]eneral rules of contract law govern an insurance contract." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So.2d 1140, 1143 (Ala. 2005). "'In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts or to take anything from them." *Upton v. Miss. Valley Title Ins. Co.*, 469 So. 2d 548, 554 (Ala. 1985) (quoting *Life & Cas. Ins. Co. v. Whitehurst*, 226 Ala. 687, 148 So. 164 (1933)).

However, Alabama courts have held that an insurance policy "shall be construed liberally in favor of the insured and strictly against the insurer. Exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company, which drafted and issued the policy." *Allstate Ins. Co. v. Skelton*, 675 So.2d 377, 379-380 (Ala. 1996) (internal citations omitted).  "To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." *Safeway Ins. Co.*, 912 So.2d at 1143. Nevertheless, "'[i]nsurance companies are entitled to have their policy contracts enforced as written, rather than risking their

terms either to judicial interpretation or the use of straining language, and the fact that different parties contend for different constructions does not mean that the disputed language is ambiguous.'" *Woodall v. Alfa Mut.Ins. Co.*, 658 So. 2d 369 (Ala. 1995) (quoting *Gregory v. W. World Ins. Co.*, 481 So. 2d 878, 881 (Ala. 1985) (citations omitted)).

"Whether a provision of an insurance policy is ambiguous is a question of law[,]" *Safeway Ins. Co.,* 912 So. 2d at 1143, and "[t]he test to be applied by a court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean. In determining whether an ambiguity exists, a court should apply the common interpretation of the language alleged to be ambiguous. This means that the terms of an insurance policy should be given a rational and practical construction." *Porterfield v. Audubon Indem. Co.*, 856 So.2d 789, 799 (Ala. 2002) (internal citations and quotations omitted); *American Resources Ins. Co. v. H & H Stephens Const., Inc.*, 939 So.2d 868 (Ala.2006).

"Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy" *Auto-Owners Ins. Co. v. Toole*, 947 F. Supp. 1557, 1561 (M.D. Ala. 1996) (citing *Colonial Life & Accident Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967) and *U.S. Fidelity & Guarantee Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985)). However, the burden shifts and the "insurer bears the burden of proving the applicability of any policy exclusion." *Id*.

QBE also seeks a declaration as to whether it has a duty to defend Whispering Pines. Under Alabama law, QBE's duty to defend is more extensive that its duty to indemnify. *Tanner v. State Farm Fire & Cas. Co.,* 874 So. 2d 1058 (Ala. 2003). A duty to defend exists where the allegations in the complaint show an accident or occurrence that comes within the coverage of the policy and the insurer must defend whether or not the insured is ultimately liable. *Chandler v.*

*Alabama Mun. Ins. Co.*, 585 So. 2d 1365, 1367 (Ala. 1991). However, QBE has no duty to defend when the allegations in the complaints show that a policy exclusion applies. *See Alfa Specialty Ins. Co. v. Jennings*, 906 So. 2d 195 (Ala. Civ. App. 2005).

    III. Analysis

    A. The Funeral Services Exclusion

Martin and Williams argue that their claims are based on Whispering Pines failure to create, keep and maintain reasonably adequate and accurate records as to the location of graves in the cemetery and therefore, QBE has a duty to defend and indemnify Whispering Pines. They argue that the Funeral Service exclusion does not apply because they do not allege that Whispering Pines engaged in funeral services and do not allege that their claims are based on the burials, *i.e.,* the handling, burial, or disposal, of their family member. They point out that Alabama law distinguishes between cemeteries and funeral establishments and their services. (Doc. 65) They also argue that Alabama law provides that a cemetery may bury the dead but by so doing, the cemetery is not engaging in a funeral service, and thus the "Funeral Services" exclusion does not apply.  They also argue that the phrase "arising out of" as used in the Funeral Services exclusion should not be read broadly enough to include the record-keeping function of a cemetery.  (Doc. 77)

QBE argues that Whispering Pines has done more than just open and close the grave but instead, has handled, disposed of and buried the bodies of Martin and Williams' family members. QBE argues that the phrase "arising out of", should be given a broad and comprehensive interpretation, and since the claims for failure to keep adequate and accurate burial records all arise out of the burial, disposal or handling of the family members' remains, the exclusion applies. (Doc. 76)

    The exclusion provides as follows:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of errors or omissions in the handling, embalming, disposal, burial, cremation, or disinterment of dead bodies.

9

(Doc. 1-10, p. 33).

Arguably, the exclusion may apply to claims directed at the burial of the family members. *See Reed v. Netherlands Ins. Co.*, 860 F. Supp. 2d 407, 413 (E. D. Mich. 2012) (finding that "an allegation that the Cemetery failed to bury [the deceased] in the right plot is an alleged error arising out of burial and is barred by the Exclusion.")[3]  However, Martin and Williams allege that Whispering Pines failed to maintain and keep adequate and accurate records as to the location of their family members' graves such that they could later find the gravesite and have a monument installed. They do not allege any error or omission in connection with the actual burials.

The Court disagrees with QBE's argument that the phrase "arising out of errors or omissions . . .in the handling . . . disposal [and] … burial" should be given a broad construction to include all record-keeping attendant to a burial including records as to the location of the grave. In general, insurance contracts are to be construed in favor of the insured.  Specifically, exclusions are to be construed narrowly so as to insure maximum coverage to the insured and construed against the insurer.  The Court in deciding whether a phrase in the policy is ambiguous should not give the phrase a strained interpretation but instead should consider what a reasonably prudent person applying for insurance would have understood the phrase to mean. Thus, reading the phrase "arising out of" to include errors and omissions resulting from Whispering Pines failure to keep and maintain adequate records such that Martin and Williams could return years later and locate their family members, would result in an overly broad interpretation of the phrase and application of the exclusion.  QBE has failed to meet its burden to show that the exclusion applies to the claims alleged in Martin and Williams' complaint. Thus, QBE has a duty to defend Whispering Pines in the underlying state court action filed by Martin and Williams.

However, as to QBE's duty to indemnify Whispering Pines should Martin and Williams

---

[3]  In this action, Martin and Williams do not allege that Whispering Pines caused their family members to be buried in the wrong plot.

10

prevail in their state court action, "[a]ny discussion of the duty to indemnify would be premature, in any event, given the lack of any final adjudication of the Underlying Action." *Essex Ins. Co. v. Foley*, 2011 WL 1706214 (S.D. Ala. May 5, 2011) citing *See, e.g., Allstate Ins. Co. v. Employers Liability Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir.1971) ("[N]o action for declaratory relief will lie to establish an insurer's liability ... until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize.")); citing *Allstate Indem. Co. v. Lewis,* 985 F.Supp. 1341, 1349 (M.D.Ala.1997) ("the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit") (citation omitted). As the undersigned has explained, "[i]t is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insureds' liability." *Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc*., 387 F.Supp.2d 1205, 1211–12 (S.D.Ala.2005)) (footnotes omitted) Therefore, the Court declines issuing a declaratory judgment as to coverage for Martin and Williams' underlying action until such time as the action is resolved.

      B. <u>Martin and Williams remaining arguments</u>

      Martin and Williams argue that the "exclusion for conduct expected or intended from the standpoint of the insured is not applicable until the conduct at issue is shown to be intentional." (Doc. 65, p. 26)  They argue that their allegations of negligence, wantonness and breach of contract do not involve allegations of intentional conduct; that they alleged that the misrepresentations underlying their claim of fraudulent suppression were made innocently or recklessly or intentionally; and that outrage can be the result of reckless or intentional conduct. (Doc. 65)  Martin and Williams also argue that they suffered mental anguish and emotion distress, *i.e.*, a "bodily injury", as a result of an "occurrence".  They argue that the "occurrence" was Whispering Pines negligent and wanton failure to "keep and maintain reasonably adequate records of the interment location of their deceased relatives and the negligent/reckless misrepresentations and suppression regarding same." (Doc. 65, p. 15)

11

QBE did not respond to these arguments. (Doc. 76)  Instead, its response focused solely on the applicability of the Funeral Services exclusion. Thus, because QBE did not raise any argument in opposition, the Court finds that QBE has abandoned any argument that these theories preclude a defense as to the allegations in Martin and Williams' complaint.  (*See* footnote 1)[4]

IV.  Conclusion

For the reasons set forth herein, Martin and Williams' motion for summary judgment is GRANTED in part, in that the Court finds that QBE has a duty to defend Whispering Pines as to the underlying action brought by Martin and Williams.

**DONE** and **ORDERED** this the 22nd day of February, 2013.

>   s / Kristi K. DuBose
>   **KRISTI K. DuBOSE**
>   **UNITED STATES DISTRICT JUDGE**

---

[4]  QBE incorporated its motion for summary judgment by reference as to its argument that Martin and Williams' claims arose "out of the burial, disposal or handling of a dead body." (Doc. 76, p. 14, n.4)