IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| QBE INSURANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff/Counterdefendant, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 12-0054-KD-C |
| | ) | |
| WHISPERING PINES CEMETERY, LLC, | ) | |
| QUEEN PETTWAY, CARLIS EATON, | ) | |
| ROSIE MAY ABRAMS, COURTNEY | ) | |
| VASHAY ABRAMS, JERMAINE ABRAMS, | ) | |
| TAMARA MARTIN, and LESESTER | ) | |
| WILLIAMS, | ) | |
| | ) | |
| Defendants/counterclaimants. | ) | |

## ORDER

This declaratory judgment action based on diversity of citizenship is before the Court on the motion for summary judgment filed by plaintiff QBE Insurance Corporation and supporting documents (docs. 68-71), the response filed by Martin and Williams (doc. 73), the response and supporting documents filed by Queen Pettway, Carlis Eaton, Rosie Mae Abrams, Courtney Vashay Abrams, and Jermaine Abrams (doc. 74, 75), and QBE's reply (doc. 78); and the Abrams' motion to strike the evidence in support of QBE's reply (doc. 79) and QBE's response (doc. 81).[1] Upon consideration and for the reasons set forth herein, QBE's motion for summary judgment is **DENIED.**

I. Factual background

QBE issued a Commercial General Liability policy to Whispering Pines Cemetery, LLC. Defendants Queen Pettway and Carlis Eaton; Rosie May Abrams, Courtney Vashay Abrams, and

---

[1] Defendants Pettway, Eaton and the Abrams family move to strike new evidence provided by QBE in its reply (doc. 79). Upon consideration, the motion is DENIED. The evidence was provided in response to the arguments raised by the defendants.

Jermaine Abrams; and Tamara Martin and Lesester Williams filed three separate lawsuits in the Circuit Court of Mobile County, Alabama, against the funeral homes involved with the respective funerals and Whispering Pines.  As to Whispering Pines, defendants brought claims of negligence, wantonness, outrage, and breach of contract based upon Whispering Pines' failure to keep and maintain adequate records of the locations where their respective family members are buried. Defendants seek compensatory and punitive damages for mental anguish and emotional distress.

Defendants Pettway and Eaton are the daughter and grandson of Reverend Joseph R. Pettway who was buried in Whispering Pines in September 2004.  After the monument was set for Reverend Pettway's grave in October 2009, his family discovered that it was not set where he was buried but had been placed in another location a considerable distance away from where they remembered his grave side service was held. Pettway and Eaton allege that the monument was placed over the wrong grave.  (Doc. 1-1, Pettway and Eaton's first amended complaint)

Defendants Williams and Martin are the family members of Steven Prince, Sr., Emma Lee Prince, Steven Prince, Jr., and William Mae Mobley who were buried at Whispering Pines in 1996, 1990, 2000, and 2004, respectively. Approximately two weeks before Mother's Day in 2009, Martin contacted Whispering Pines to locate her mother Emma Lee Prince's grave to place a monument.  She also asked for the section and lot number of the graves of her father and siblings. Whispering Pines was unable to tell her where her mother was buried but did provide the information as to her father and siblings. (Doc. 63-1, second amended complaint in the state court action)

In addition to negligence, wantonness, outrage and breach of contract, defendants Williams and Martin also claim fraudulent suppression and misrepresentation. *Id*. Williams and Martin base this claim on Whispering Pines' representation that it knew where Emma Lee Prince's grave was located, when it did not have any records of the location, and on Whispering Pines' duty to inform Williams and Martin that the location could not be identified because of its failure to keep and maintain accurate records of the gravesites. *Id*.  Martin and Williams also allege that they are not

2

bringing any claims related to the actual burial of their family members but raise their claims only as to Whispering Pines' failure to keep and maintain accurate records as to where their family member were buried. *Id.*

Defendant Rosie Mae Abrams is the wife of Bud Johnson Abrams who was buried in Whispering Pines in September 2007. Defendants Courtney and Jermaine are their children. After the monument was set for Mr. Abrams' grave in 2009, his family discovered that it was not set where he was buried. The Abrams notified Whispering Pines.  Ultimately, after Whispering Pines denied any mistake, the remains where the monument was set were exhumed and found to be those of Johnny Jackson, Jr. Thereafter, Mr. Abrams' remains were exhumed from another location. Jermaine viewed and identified the remains of his father. (Docs. 1-2 through 8, Abrams' complaint and amended complaints)  (The Jackson family settled their lawsuit in December 2011. (Doc. 1, p. 11, n. 2)

After this declaratory judgment action was filed, the Abrams family obtained a default judgment in the amount of $2,500,000.00 in their state court action against Whispering Pines.  The Abrams family dismissed their claim for breach of contract and Rosie Mae, Courtney and Jermaine Abrams were awarded compensatory damages in the amount of $500,000 each for their claims of negligence, wantonness, and outrage.  Punitive damages were awarded in the total amount of $1,000,000.00 (Doc. 75-1, Judgment)   The Abrams family garnished QBE as Whispering Pines' insurance carrier.  QBE removed the garnishment proceeding to this Court. Pettway and Eaton's and Martin and Williams' state court actions remain pending in the state court.

QBE seeks a declaratory judgment that it does not owe any coverage or defense to Whispering Pines.  In its complaint, QBE asserts four theories as to why coverage or a defense is not owed: 1) The Funeral Services Exclusion applies to claims arising out of the burial, handling

or disposal of a body; 2) some of the claims did not occur during the policy period;[2] 3) the claims

arise from intentional conduct and thus are not an "occurrence" as defined in the policy; and 4) as

to the claims for breach of contract, the policy contains a contractual liability exclusion which

excludes claims based on liability assumed in a contract.[3]  (Doc. 1) Defendants answered and

counterclaimed for declaratory relief. (Docs. 12, 15)

       Section 1 of the policy addresses coverage. In paragraph 1, captioned "Insuring

Agreement", the policy states in relevant part, as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as
> damages because of "bodily injury" or "property damage" to which this insurance
> applies.  We will have the right and duty to defend the insured against any "suit"
> seeking those damages. However, we will have no duty to defend the insured

---

[2] The policy had a stated term of March 26, 2009 to March 26, 2010. (Doc. 1-10, p. 1)
Whispering Pines cancelled the policy on November 25, 2009. (Doc. 1-11, Cancellation Request)
On motion for summary judgment, Martin and Williams argue that their injury occurred and their
claims arose during the policy period (near Mother's Day 2009). (Doc. 65) QBE did not respond
to their argument. (Doc. 76)  Also, on motion for summary judgment, QBE did not argue that any
of the underlying plaintiffs' claims occurred outside of the policy period. (Doc. 68, 69)  In their
response, Martin and Williams point out that QBE included a proposed finding of fact that they
"did not know that their family members' grave locations were unknown until June 2010, after the
Policy had terminated" but otherwise did not address the issue. (Doc. 73, p. 2, n.1; Doc. 70)

Because QBE did not raise this theory in its motion for summary judgment or in its
response to Martin and Williams' motion for summary judgment, the Court finds that QBE has
abandoned this theory. *See Brasseler, USA I, LP v. Stryker Sales Corp*, 182 F. 3d 888, 892 (Fed.
Cir. 1999) (discussing *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler
Corp.*, 10 F. 3d 1563 (11th Cir. 1994), and explaining that where plaintiff failed to address a claim
in its opposition to defendant's motion for summary judgment and "did not raise the theory in its
own motion for summary judgment", the Eleventh Circuit properly treated the claim as
abandoned); *see Floyd v. Home Depot USA*, 274 Fed. Appx. 763 (11th Cir. 2008) (finding that
district court properly determined that Floyd had abandoned his ADA retaliation termination claim
because he did not respond to Home Depot's argument on that claim) (citing *Resolution Trust
Corp. v. Dunmar Corp.*, 43 F. 3d 587, 599 (11th Cir. 1995)).

[3] Martin and Williams argue that this policy exclusion does not apply. (Doc. 65) QBE did
not respond to their argument. (Doc. 76)  Also, on motion for summary judgment, QBE did not
argue that this exclusion precluded coverage or a defense. (Doc. 68, 69)  In their response, Martin
and Williams point out that QBE "relies almost exclusively on the Funeral Services exclusion"
(doc. 73, p. 3).  Accordingly, the Court finds that QBE has abandoned this theory. *See* footnote 2.

against any "suit" seeking damages for "bodily injury" or "property damage" to
which this insurance does not apply.  . . .

b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that
takes place in the "coverage territory[.]

(Doc. 1-10, p. 14)

 In paragraph 2, captioned "Exclusions", the policy states as follows:

This insurance does not apply to (a) Expected or Intended Injury. "Bodily injury"
or "property damage" expected or intended from the standpoint of the insured.

(Doc. 1-10, p. 15)

Section V, contains the definitions applicable to the policy. "'Bodily injury' means bodily

injury, sickness or disease sustained by a person, including death resulting from any of these at

any time." (Doc. 1-10, p. 25)   "'Occurrence' means an accident, including continuous or repeated

exposure to substantially the same general harmful conditions." (Doc. 1-10, p. 27)

The policy issued to Whispering Pines contains a Funeral Services Exclusion endorsement

that provides as follows:

The following exclusion is added to Paragraph 2., Exclusions of Section 1 - -
Coverage A - - Bodily Injury And Property Damage Liability and Paragraph 2.,
Exclusions of Section 1 - - Coverage B - - Personal And Advertising Injury
Liability:

This insurance does not apply to "bodily injury", "property damage" or "personal
and advertising injury" arising out of errors or omissions in the handling,
embalming, disposal, burial, cremation, or disinterment of dead bodies.

(Doc. 1-10, p. 33).

II. Conclusions of law

A. Jurisdiction and venue

This Court has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201

and diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Venue is proper because the events giving

rise to this action occurred in the Southern District of Alabama. 28 U.S.C. § 1391(b)(2) ("A civil

action may be brought in – a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated[.]")

    B.  <u>Choice of law</u>

The substantive law of the State of Alabama applies to this diversity action. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) ("[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits.") (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  In that regard, the substantive law of Alabama follows the traditional conflict-of-law principles of *lex loci contractus* and *lex loci delicti.  Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009). The parties do not dispute that the insurance contract was made in Alabama or that Alabama was the site of the conduct giving rise to the torts alleged. *See Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004)("The doctrine [of *lex loci contractus*] states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction.") (citing *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991)) (internal quotations omitted); *Cincinnati Ins. Co. v. Girod*, 570 So. 2d 595, 597 (Ala. 1990)) ("Because this dispute involves an interpretation of an insurance policy issued in the State of Alabama, under Alabama's conflicts of law rule the trial court would be obligated to apply the substantive law of Alabama . . .")

Additionally, "[i]It is well settled that federal courts are bound by the interpretation of a state statute by state courts." *Insurance Co. of North America v. Lexow*, 937 F.2d 569, 571 (11th Cir.1991).  Also, "[i]n applying state law, a federal court must 'adhere to decisions of the state's

intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Id*. (citations omitted).

    C.  <u>Summary judgment standard</u>

    Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If a party asserts "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)&(B).

    The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)).

    Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of materialfact. *Id*.   "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter.  Instead, the evidence of the non-

7

movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S.Ct. 1598, 1608-1609 (1970).  However, "[a] moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552). Overall, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)).

D.  Statement of the law

In Alabama, "[g]eneral rules of contract law govern an insurance contract." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So.2d 1140, 1143 (Ala. 2005). "'In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts or to take anything from them." *Upton v. Miss. Valley Title Ins. Co.*, 469 So. 2d 548, 554 (Ala. 1985) (quoting *Life & Cas. Ins. Co. v. Whitehurst*, 226 Ala. 687, 148 So. 164 (1933)).

However, Alabama courts have held that an insurance policy "shall be construed liberally in favor of the insured and strictly against the insurer. Exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company, which drafted and issued the policy." *Allstate Ins. Co. v. Skelton*, 675 So.2d 377, 379-380 (Ala. 1996) (internal citations omitted).  "To

the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." *Safeway Ins. Co.*, 912 So.2d at 1143. Nevertheless, "'[i]nsurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that different parties contend for different constructions does not mean that the disputed language is ambiguous.'" *Woodall v. Alfa Mut.Ins. Co.*, 658 So. 2d 369 (Ala. 1995) (quoting *Gregory v. W. World Ins. Co.*, 481 So. 2d 878, 881 (Ala. 1985) (citations omitted)).

"Whether a provision of an insurance policy is ambiguous is a question of law[,]" *Safeway Ins. Co.,* 912 So. 2d at 1143, and "[t]he test to be applied by a court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean. In determining whether an ambiguity exists, a court should apply the common interpretation of the language alleged to be ambiguous. This means that the terms of an insurance policy should be given a rational and practical construction." *Porterfield v. Audubon Indem. Co.*, 856 So.2d 789, 799 (Ala. 2002) (internal citations and quotations omitted); *American Resources Ins. Co. v. H & H Stephens Const., Inc.*, 939 So.2d 868 (Ala.2006).

"Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy" *Auto-Owners Ins. Co. v. Toole*, 947 F. Supp. 1557, 1561 (M.D. Ala. 1996) (citing *Colonial Life & Accident Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967) and *U.S. Fidelity & Guarantee Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985)). However, the burden shifts and the "insurer bears the burden of proving the applicability of any policy exclusion." *Id*.

QBE also seeks a declaration as to whether it has a duty to defend Whispering Pines. Under Alabama law, QBE's duty to defend is more extensive that its duty to indemnify. *Tanner v.*

9

*State Farm Fire & Cas. Co.,* 874 So. 2d 1058 (Ala. 2003).  A duty to defend exists where the allegations in the complaint show an accident or occurrence that comes within the coverage of the policy and the insurer must defend whether or not the insured is ultimately liable. *Chandler v. Alabama Mun. Ins. Co.,* 585 So. 2d 1365, 1367 (Ala. 1991).  However, QBE has no duty to defend when the allegations in the complaints show that a policy exclusion applies. *See Alfa Specialty Ins. Co. v. Jennings*, 906 So. 2d 195 (Ala. Civ. App. 2005).

      III. <u>Analysis</u>

      A.  <u>The Funeral Services Exclusion</u>

      In the motion for summary judgment, QBE argues that it owes no duty to defend or indemnify Whispering Pines because the complaints in the underlying state court actions allege conduct that relates to errors and omission in the handling, disposal, or burial of dead bodies and the Funeral Services Exclusion, by its plain and unambiguous language, states that the insurance does not apply to injury arising out of such errors and omissions.  QBE argues that "handling" and "disposal"  of dead bodies should be read broadly enough to include errors or omissions in record-keeping as to the location of the graves.

      The Funeral Services exclusion provides as follows:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of errors or omissions in the handling, embalming, disposal, burial, cremation, or disinterment of dead bodies.

(Doc. 1-10, p. 33)

      The families' allegations are based on the recording of grave sites.  The allegations include failing to maintain a cemetery plat map, failing to maintain accurate burial records, failing to correct errors in their records, and failing to train their employees to keep records.  (Doc. 1-1, Pettway and Eaton's first amended complaint, Doc. 1-8, the Abrams' sixth amended complaint, Doc. 63, Martin and Williams' second amended complaint)

      Arguably, the exclusion may apply to claims directed at the burial of the family members.

*See Reed v. Netherlands Ins. Co.*, 860 F. Supp. 2d 407, 413 (E. D. Mich. 2012) (finding that "an allegation that the Cemetery failed to bury [the deceased] in the right plot is an alleged error arising out of burial and is barred by the Exclusion.")[4]   However, the families allege that Whispering Pines failed to maintain and keep adequate and accurate records as to the location of their family members' graves such that they could later find the gravesite and have a monument installed. They do not allege any error or omission in connection with the actual burials.

QBE's argument, that the phrase "arising out of errors or omissions . . .in the handling . . . disposal [and] … burial" should be construed broadly to include errors and omissions regarding the records of the location of the grave, is not persuasive.  In general, insurance contracts are to be construed in favor of the insured.  Specifically, exclusions are to be construed narrowly so as to insure maximum coverage to the insured and construed against the insurer.  The Court should not give a phrase in a contract of insurance a strained interpretation, but instead should consider the common meaning, *i.e.*, what a reasonably prudent person applying for insurance would have understood the phrase to mean.  Interpreting the phrase "arising out of" to include record keeping errors is not a narrow, or rational and practical, interpretation of the exclusion.  Since the primary purpose of a cemetery is to bury or dispose of dead bodies and practically every act they do is related to this function, interpreting the phrase as QBE urges would result in no coverage at all. Accordingly, QBE has failed to meet its burden to show that the exclusion applies to the claims alleged in the families' complaints and thus QBE is not entitled to summary judgment.

B.  Other policy exclusions

In the motion for summary judgment, QBE argues that it has no duty to indemnify Whispering Pines for the default judgment entered against it in the Abrams family's state court action because the trial court's factual findings in the order of default judgment show that there was no "occurrence" as defined under the policy. (Doc. 69)  QBE points out that the policy defines

---

[4]  In this action, the families do not allege that Whispering Pines caused their family members to be buried in the wrong plot.

an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  And, although "accident" is not defined in the policy, under Alabama law an accident is an "unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events that could be reasonably anticipated." QBE also relies on the exclusion for "Expected or Intended Injury" which precludes coverage for "bodily injury. . . expected or intended from the standpoint of the insured." QBE argues that because Whispering Pines acted deliberately and intentionally by failing to maintain adequate records, the injury was intended, expected or foreseeable, thus, no accident occurred and therefore, QBE owes no coverage.

The Abrams family responds that QBE's argument that Whispering Pines' conduct was not accidental and therefore not an occurrence is an impermissible collateral attack on the state court default judgment.  They also argue that there is substantial evidence that the policy provides coverage because QBE has admitted that the policy provides coverage for bodily injury arising from the operational and administrative negligence on the part of Whispering Pines.  They argue that the allegations in the underlying actions were related to the operational and administrative aspect of the cemetery business and were not related to or arising from a burial or disposition of the family members' remains.

In paragraph 2, captioned "Exclusions", the policy states as follows:

This insurance does not apply to (a) Expected or Intended Injury. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

(Doc. 1-10, p. 15)   The policy also states that "this insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory[.]" (Doc. 1-10, p. 14)   Under the policy, "'occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1-10, p. 27)

The word "accident" is not defined in the policy. However, in Alabama, it has been

"variously defined as something unforeseen, unexpected, or unusual." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1011 (Ala. 2005).  In *St. Paul Fire & Marine Insurance. Co. v. Christiansen Marine, Inc.,* 893 So.2d 1124, 1136 (Ala. 2004), the Alabama Supreme Court relied upon the definition found in *Black's Law Dictionary* 15 (7th ed. 1999): "An unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated."  "Thus, in determining whether an event constitutes an 'occurrence,' the Court must consider whether the insured expected or intended the conduct alleged in the underlying complaint." *U.S. Liability Ins. Co. v. Sternenberg Const.* 2011 WL 3585261, 4 (M.D. Ala. Aug. 16, 2011).

The elements of a negligence claim under Alabama law do not require proof of intent or expected injury. *QORE, Inc. v. Bradford Bldg. Co.,* 25 So.3d 1116, 1123 (Ala.2009) ("In a negligence action the plaintiff must prove (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and proximate cause of the plaintiff's loss or injury.") (citations omitted).  Therefore, the factual findings as to the Abrams' claims based on negligence – that Whispering Pines "failed to manage the Cemetery as a reasonably prudent cemetery company would manage in a similar cemetery" - constitute an "occurrence" and not an expected or intended injury that would be excluded from coverage by the terms of the policy. (Doc. 70-3, p. 6)

Under Alabama law:

"'Wantonness' has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. *Bozeman v. Central Bank of the South*, 646 So.2d 601 (Ala. 1994). To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff."

*McKenzie v. Killian,* 887 So.2d 861, 71 (Ala. 2004).  Thus in order to recover on a claim of wantonness, the Abrams need not have proven that Whispering Pines acted with "specific design

13

or intent" to injure them.   The factual finding by the state court, that Whispering Pines "acted with a reckless disregard for the rights of the Abrams and other families" (Doc. 70-6), is not the same as a factual finding that Whispering Pines foresaw, expected or intended the injury from its standpoint.  Therefore, the factual finding supports an "occurrence" and not an expected or intended injury, which would be excluded from coverage by the terms of the policy.

As to the Abrams family's claim for outrage, Alabama law requires proof of either intentional or reckless conduct. The state court applied the standard expressed in *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000), which states that plaintiffs must "demonstrate that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." The state court then found that the Abrams family presented substantial evidence that Whispering Pines had been aware of the problem with its record-keeping for many years, had done nothing to correct the problem, and that it acted with "total disregard for the sanctity" of the persons interred and with "total disrespect" for their families. The state court found that the Abrams family met the elements of a claim for outrage but did not specifically find whether Whispering Pines acted with intent or that its conduct was reckless.  Therefore there is at least a question of fact whether the Abrams' family recovery for outrage is covered under the policy.

IV.  Conclusion

For the reasons set forth herein, QBE's motion for summary judgment is DENIED.

**DONE** and **ORDERED** this the 25th day of February, 2013.

**s / Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**